IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| WILLIAM AUBRY MARSHALL, JR., *et al.* | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| JAMES B. NUTTER & COMPANY, | * |
| Defendant. | * |

Civil Action No.: RDB-10-3596

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff William Aubry Marshall, Jr. filed this action, on behalf of himself and all others similarly situated, against Defendant James B. Nutter & Company, for alleged unlawful activities under the Maryland Finder's Fee Act and the Maryland Consumer Protection Act. Currently pending before this Court is Defendant's Motion to Dismiss, and Plaintiff's Motion to Strike New Arguments in Defendant's Reply or alternatively for Leave to File a Surreply. This Court has reviewed the record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendant's Motion to Dismiss (ECF No. 7) is DENIED, and Plaintiff's Motion to Strike (ECF No. 20) is DENIED as moot.

## BACKGROUND

On September 22, 2010, William Aubry Marshall ("Plaintiff" or "Marshall") filed this class action lawsuit in the Circuit Court for Baltimore City, seeking damages and declaratory relief against Defendant James B. Nutter & Company ("Defendant" or "Nutter"). Marshall alleges that Defendant, a national mortgage lender, violated the Maryland Finder's Fee Act

("MFFA"), MD. CODE ANN., COM. LAW §§ 12-801 *et seq.*, and the Maryland Consumer

Protection Act ("MCPA"), MD. CODE ANN., COM. LAW §§ 13-101 *et seq.*, by conspiring with

mortgage brokers to steer business to Nutter and to reap illegal mortgage transaction fees.

On December 23, 2010, Defendant removed Marshall's lawsuit to this Court on the basis of

diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

Broadly speaking, Plaintiff alleges that Nutter, one of the largest private mortgage

banking firms in the country, Compl. ¶ 11, works with Maryland mortgage brokers in order

to procure new borrowers and originate the mortgages for Nutter—in essence, while Nutter

provides the funding for the mortgages, it relies on brokers to do the actual footwork of

originating new business.  In this regard, Plaintiff claims that Nutter engaged in a practice

known as "table-funding" whereby Nutter would advance funds to the broker who would in

turn make the loan and upon closing, immediately assign the loan to Nutter, the actual

funding party.  *Id.* ¶¶ 18-21, *see also* 24 C.F.R. § 3500.2(b) (A "table-funded" transaction is a

closing "at which a loan is funded by a contemporaneous advance of loan funds and an

assignment of the loan to the person advancing the funds.").  Plaintiff alleges that table-

funding "has the purpose and effect of concealing the true role of the mortgage

broker/lender in the transaction as well as the identity of the funding lender from the

borrower until after settlement."  Compl. ¶ 2.

While mortgage brokers are generally permitted to charge "finder's fees" in

connection with originating mortgage loans, under the Maryland Finder's Fee Act, "a

mortgage broker may not charge a finder's fee in any transaction in which the mortgage

broker . . . is the lender . . . ."  MD. CODE ANN., COM. LAW §§ 12-804(e).  In essence,

therefore, the MFFA forbids the collection of a finder's fee by an entity simultaneously acting as a broker *and* a lender.  Plaintiff alleges that Nutter conspired with mortgage brokers "to violate the [MFFA] by agreeing and requiring that brokers would (a) act as both the mortgage broker and the nominal lender in mortgage loan transactions, when Nutter and the brokers knew, agreed, and understood that Nutter was the funding lender; and (b) charge unlawful finder's fees to borrowers in connection with those transactions."  Compl. ¶ 5.  Moreover, Plaintiff alleges that by concealing the table-funded nature of the transactions, Nutter violated the Maryland Consumer Protection Act, *id.* ¶ 7, which generally prohibits "unfair or deceptive trade practices."  MD. CODE ANN., COM. LAW § 13-301.  Plaintiff contends that the unlawful finder's fees charged to the class members "averaged more than $3,000 per mortgage transaction, resulting in tens of millions of dollars or more in unlawful charges to borrowers during the twelve-year period covered by this Class Action Complaint."  Compl. ¶ 6.  Moreover, Marshall alleges various overt acts committed by Nutter in furtherance of the conspiracy including, *inter alia*, requiring mortgage brokers to identify themselves as lenders while simultaneously acting as brokers; entering into agreements with brokers that resulted in brokers assuming this dual role; underwriting and table-funding mortgage loan transactions; concealing its role as the true lender; creating documents concealing Nutter's role as the true mortgage lender; and authorizing the charging of the allegedly illegal finder's fees to brokers who acted as both brokers and lenders.  *Id.* ¶¶ 44, 55.

With respect to the specific allegations by the named Plaintiff, Marshall alleges that prior to the closing of his mortgage on September 11, 2008, Nutter conspired with a

mortgage broker, Savings First, LLC ("Savings First") to conceal Nutter's role in the mortgage lending process and facilitate a table-funded transaction whereby Savings First could charge illegal finder's fees in the amount of $3,665.56.  *Id.* ¶¶ 26-30.  Specifically, Plaintiff claims that in his mortgage loan discussions with Savings First, the company provided a disclosure form to Marshall in which it explicitly stated that Savings First "will never act as the lender and as a broker at the same time, in connection with the same loan." *Id.* ¶ 24, Ex. A, ECF No. 2-1.  Notwithstanding this disclosure, Marshall alleges that Savings First, at the behest of Nutter, did indeed act as both the mortgage broker and mortgage lender.  *Id.* ¶¶ 26-28.  In particular, Marshall points to numerous documents purportedly indicating that Savings First was the lender when in fact Nutter provided the actual funding. *Id.* ¶ 29; Pl.'s Opp'n at 17, ECF No. 14.  At base, Plaintiff's Complaint alleges that Nutter conspired with mortgage brokers to conceal Nutter's involvement as the true source of the mortgage loan funding in order to arrange finder's fees to be paid to the brokers as a reward for funneling business to Nutter.  As a result of the Defendant's allegedly illegal acts, misstatements, and omissions, Marshall alleges that he was induced into entering into the mortgage loan transaction and suffered injury and damages including, but not limited to, the payment of $3,665.56 in unlawful finder's fees.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test

the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits

of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483

(4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of

Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  When ruling on such a motion, the court must

"accept the well-pled allegations of the complaint as true," and "construe the facts and

reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v.

United States*, 120 F.3d 472, 474 (4th Cir. 1997).  However, this Court "need not accept the

legal conclusions drawn from the facts, and [this Court] need not accept as true unwarranted

inferences, unreasonable conclusions or arguments." *Nemet v. Chevrolet, Ltd. V.

Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and

citation omitted).

A complaint must be dismissed if it does not allege "enough facts to state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also

Simmons v. United Mort. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. Jan. 21, 2011); *Andrew

v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009).  Under the plausibility standard, a complaint must

contain "more than labels and conclusions" or a "formulaic recitation of the elements of a

cause of action." *Twombly*, 550 U.S. at 555.  "Even though the requirements for pleading a

proper complaint are substantially aimed at assuring that the defendant be given adequate

notice of the nature of a claim being made against him, they also provide criteria for defining

issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*,

588 F.3d 186, 192 (4th Cir. 2009).  To survive a Rule 12(b)(6) motion, the legal framework of

the complaint must be supported by factual allegations that "raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555.   The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.   *Ashcroft v. Iqbal*, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009).   The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556.   Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.   Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.* at 1950.

## ANALYSIS

### I.  Plaintiff's Motion to Strike

Defendant's Motion to Dismiss makes two primary arguments: First, Nutter argues that Marshall's Complaint must be dismissed for failure to join indispensable parties under Federal Rules of Civil Procedure 12(b)(7) and 19.   Second, Nutter argues that Marshall's Maryland Consumer Protection Act claim must be dismissed for failure to state a claim under Rule 12(b)(6).   Aside from its contention that Rule 19 mandates dismissal of the entire Complaint, Nutter does not specifically address Plaintiff's Maryland Finder's Fee Act claim. In his opposition, Plaintiff addresses only those specific arguments made by the Defendant. In its reply, however, Defendant raises three entirely new arguments[1] for dismissal.

---

[1]   In response to Plaintiff's Motion to Strike the new arguments, Nutter states that its reply "simply responds to Marshall's preceding Opposition and amplifies the arguments set forth in the original Motion to Dismiss." Def.'s Opp'n at 1, ECF no. 21.   Despite Nutter's protestations to the contrary,

Specifically, Nutter argues in its reply that (1) Plaintiff's MFFA claim should be dismissed under Rules 12(b)(6) and 9(b); (2) Plaintiff failed to allege damages with respect to his MCPA claim; and (3) that Plaintiff's claims of misrepresentation, concealment, and omission are "negated" as a result of Plaintiff's supposed knowledge of Nutter's involvement in the mortgage loan transaction.

In light of the fact that this Court's Local Rules prohibit the Plaintiff from responding to the new arguments raised by the Defendant without leave of court, *see* Local Rule 105.2(a) (D. Md. 2011), Marshall has moved to strike the new arguments, or in the alternative for leave to file a surreply (ECF No. 20).  This Court has previously held that "[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 735 (D. Md. 2006) (citing *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006).  Moreover, this Court has also noted that "[c]ourts have broad discretion to decline to consider arguments or issues first raised in a reply brief." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 512 (D. Md. 2009).  However, in keeping with its broad discretion on this matter, this Court declines to strike portions of Defendant's reply brief, and it is unnecessary for the Plaintiff to file a surreply.  Because Plaintiff's have adequately pled a cause of action on their MFFA and MCPA claims, the Defendant's Motion to Dismiss (including the arguments first raised in its reply brief) will be denied.  Therefore, Plaintiff's motion to strike is moot, and will be denied accordingly.

---

the arguments made in its reply are clearly new arguments in that they were in no way included in its original motion to dismiss.  Indeed, as noted by the Plaintiff "it is impossible to 'amplify' an argument not made in the Motion to Dismiss."  Pl.'s Reply at 2, ECF No. 22.

## II.  Joinder of Parties

As previously mentioned, Nutter's primary argument for dismissal is that Plaintiff failed to join indispensable parties under Federal Rule of Civil Procedure 19.  Specifically, Defendant argues that Savings First and the other unnamed co-conspirator mortgage brokers must be joined as necessary parties because, absent joinder, this Court "cannot accord complete relief among the existing parties in the absence of the mortgage brokers." Def.'s Mem. at 2, ECF No. 7-1.  In this regard, Defendant argues that "the conduct of Savings First and the other unnamed mortgage brokers is at the heart of the overarching legal and factual issues." *Id.*  In making this argument, Defendant places particular emphasis on *Hashop v. Federal Home Loan Mortgage Corp.*, a case arising out of the United States District Court for the Northern District of Illinois.  171 F.R.D. 208 (N.D. Ill. 1997).  However, Defendant's reliance on this case is misplaced.

In *Hashop*, a class of mortgagees filed suit against the Federal Home Loan Mortgage Corporation ("Freddie Mac"), a mortgage lender, alleging that they had been required by separate loan servicers to make excessive escrow payments.  *Id.* at 210.  The court held that because it was the servicers who were responsible for controlling the mortgage servicing operations, including the setting of the escrow payments, they were at the center of the litigation, and were therefore indispensable parties under Rule 19.  *Id.* at 211.  *Hashop* was essentially a breach of contract case, and there were no allegations that Freddie Mac conspired with the unnamed loan servicers to charge inflated escrow payments.  Because Freddie Mac had no knowledge as to the escrow payments, the court would be required "to examine the manner in which each servicer handles its escrow payments." *Id.*

In contrast, the Plaintiff in this case alleges that Nutter conspired with Savings First and other unnamed mortgage brokers to violate the Maryland Finder's Fee Act and the Maryland Consumer Protection Act—in other words, Nutter had direct involvement in the precise transaction that gave rise to Marshall's claim.  Plaintiff has alleged that Nutter and the mortgage brokers are co-conspirators and joint tortfeasors[2] subject to joint and several liability.  In this regard, it is well settled law that Rule 19 does not require the mandatory joinder of co-conspirators.  Indeed, courts at every level, including the Supreme Court of the United States, the Federal Rules of Civil Procedure themselves, and numerous commentators have recognized that Rule 19 does not mandate joinder of co-conspirators. *See, e.g.*, *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.") (citations omitted); *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1198 (6th Cir. 1983) ("It is beyond peradventure that joint tortfeasors are not indispensable parties in the federal forum."); 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1623 (3d ed. 2001) ("coconspirators, like other joint tortfeasors, will not be deemed indispensable parties").  This principle was explicitly recognized by the drafters of Rule 19.  In the Advisory Committee Note to the 1966 amendment to Rule 19, the drafters stated:

---

[2]  Under Maryland law, "[c]onspirators are joint tortfeasors and each is jointly and severally liable for all damages naturally flowing from the conspiracy . . . ."  *Alleco, Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 639 A.2d 173, 179 (Md. Ct. Spec. App. 1994) (internal quotation marks and citations omitted).

> It should be noted particularly, however, that the description is not at variance
> with the settled authorities holding that a tortfeasor with the usual "joint-and-
> several" liability *is merely a permissive party* to an action against another with like
> liability. . . . Joinder of these tortfeasors continues to be regulated by Rule 20 .
> . . .

Fed. R. Civ. P. 19 Advisory Committee Note, 1966 Amendment.

Under Rule 20 of the Federal Rules of Civil Procedure, Defendants "*may* be joined in one action . . . if . . .any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences . . . ." Fed. R. Civ. P. 20 (emphasis added).  Accordingly, it is clear that Savings First and the other unnamed mortgage brokers are merely subject to permissive joinder, and are not indispensable parties to this litigation.   Therefore, Defendant's Motion to Dismiss on the basis of Rule 19 joinder is denied.

## III.  Count One: Conspiracy to Violate the Maryland Finder's Fee Act

As previously mentioned, the Maryland Finder's Fee Act proscribes the collection of finder's fees by a person or entity that acts as both a mortgage broker and a mortgage lender. *See* MD. CODE ANN., COM. LAW § 12-804.  Under the scheme described in the Plaintiff's Complaint, Nutter allegedly conspired with various mortgage brokers to violate the MFFA by table-funding mortgage loan transactions so that the brokers in question could collect finder's fees while simultaneously acting as the nominal mortgage lender.  Under Maryland law, a claim for civil conspiracy must allege "(1) a confederation of two or more persons by agreement or understanding; (2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and (3) actual legal damages resulting to the plaintiff." *Petry v. Wells Fargo Bank, N.A.*, 597 F.

Supp. 2d 558, 565 (D. Md. 2009) (quoting *Lloyd v. General Motors Corp.*, 916 A.2d 257, 284 (Md. 2007)).

Nutter argues that because "[t]he [MFFA] only applies to mortgage brokers," it is "simply inapplicable to mortgage lenders such as Nutter." Def.'s Reply at 20. However, in a very similar case, this Court rejected that argument and allowed civil conspiracy claims to proceed against Wells Fargo Bank, a national mortgage lender. In *Petry v. Wells Fargo Bank, N.A.*, this Court noted: "Plaintiffs have alleged a detailed scheme under which Defendants conspired to deprive Plaintiffs of their property and statutory rights by, *inter alia*, violating the Maryland Finder's Fee Act, and the Maryland [Consumer Protection Act] (both "unlawful" acts). *This is all that is required*." 597 F. Supp. 2d at 565 (emphasis added). As in *Petry*, Marshall has pled sufficient and plausible facts in support of his conspiracy claim against Defendant Nutter.

Next, Defendant argues that Plaintiff's MFFA claim must fail because Marshall has failed to plead the existence of actual damages. In his Complaint, Marshall clearly states that he suffered damages "including but not limited to the payment of unlawful finder's fees." Compl. ¶ 45. In this regard, Defendant essentially argues that because mortgage brokers are generally entitled to collect finder's fees, any damages to the Plaintiff will be statutory, and not actual. *See* Def.'s Reply at 21. However, this argument completely misses the mark—the entire thrust of Plaintiff's allegations is that the fees he was charged in connection with his mortgage transaction were *unlawful* insofar as Savings First acted as both the broker and lender in contravention of the MFFA. This is a factual issue to be addressed in this litigation. Accordingly, Nutter's Motion to Dismiss is denied as to Count One.

**IV.  Count Two: Conspiracy to Violate the Maryland Consumer Protection Act**

The Maryland Consumer Protection Act prohibits "unfair or deceptive trade practices," and lists fourteen categories of proscribed conduct.  MD. CODE ANN., COM. LAW § 13-301.  Specifically, the MCPA prohibits both the use of false or misleading statements, and also the omission of material facts.  *Id.*  Under the MCPA, "an individual may only bring a claim if she can 'establish the nature of the actual injury of loss that he or she allegedly sustained as a result of the prohibited practice.'"  *Allen v. CitiMortgage, Inc.*, No. CCB-10-2740, 2011 WL 3425665, at *10 (D. Md. Aug. 4, 2011) (quoting *Lloyd v. General Motors Corp.*, 916 A.2d 257, 280 (Md. 2007)).

Plaintiff alleges that Nutter violated the MCPA by conspiring with mortgage brokers to make false statements, deceptive and misleading representations, and to omit relevant information with regard to Nutter's nature as the true mortgage lender in mortgage loan transactions.  Because Plaintiff's false statement and misrepresentation claims sound in fraud, they are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  *See Allen*, 2011 WL 3425665, at *9 (citing *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 n.10 (D. Md. 2009).  Rule 9(b) sets forth a heightened pleading standard for fraud claims, as it requires that "a party must state with particularity the circumstances constituting fraud or mistake."  These circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

A failure to comply with this rule is treated as a failure to state a claim under Rule 12(b)(6). *See id.* at 783 n. 5.  Plaintiff's claims of omissions, however, are not subject to the heightened pleading standards of Rule 9(b) because such allegations cannot be described in terms of the time, place, and contents of the omission.  *See Robinson v. Fountainhead Title Group Corp.*, 447 F. Supp. 2d 478, 490 (D. Md. 2006).

Here, Plaintiff has met his burden.  His conspiracy allegations are supported with numerous documents purportedly evidencing Nutter's involvement in the scheme to conceal its identity as the true mortgage lender.  *See, e.g.*, Compl. Ex. B, ECF No. 2-2 (Department of Housing and Urban Development form listing Savings First as the lender).  During his negotiations with Savings First, Marshall was provided with a document in which Savings First stated that it would "never act as both" broker and lender, when in actuality Plaintiff alleges it did just that.  *See id.* Ex. A, ECF No. 2-1.  Moreover, Plaintiff has alleged that Nutter and its co-conspirator Savings First made numerous omissions, which are not subject to Rule 9(b)'s heightened pleading standards, that "had the purpose and effect of concealing the true role of the mortgage broker/lender in the transaction as well as the identity of the funding lender from the borrower until after settlement."  Compl. ¶ 2.  Plaintiff has therefore pled with sufficient particularity the events and actions giving rise to his conspiracy claims and he has specifically alleged that the misrepresentations and omissions perpetrated by Nutter caused him to suffer damages in the form of illegal finder's fees.  Accordingly,

Defendant's Motion to Dismiss is denied as to Count Two, and this case will proceed to discovery.[3]

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 7) is DENIED, and Plaintiff's Motion to Strike (ECF No. 20) is DENIED as moot.

A separate Order follows.

Dated:  September 29, 2011

/s/_____
Richard D. Bennett
United States District Judge

---

[3]  In a closely analogous case, this Court has noted that:

> At this early stage in the litigation, Plaintiffs have not had the opportunity to conduct *any* discovery.  Thus, as in the case of *Minter v. Wells Fargo Bank, N.A., et al.*, 593 F.Supp.2d 788 (D. Md. 2009), a case involving the same defendants and the same underlying set of facts, this case provides a situation where most, if not all the relevant facts are exclusively within the control of Defendants.  The Fourth Circuit has noted that when such a situation presents itself, " 'sufficient time for discovery is considered especially important . . . .' "  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 247-48 (4th Cir. 2002) (quoting 10B CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2741, at 419 (3d ed. 1998)).  *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 563 (D. Md. 2009).