IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM AUBREY MARSHALL, JR., *et al.*

    Plaintiffs,

        v.

JAMES B. NUTTER & COMPANY,

    Defendant.

Civil Action No.: RDB-10-3596

## **MEMORANDUM OPINION**

Plaintiff William A. Marshall, Jr. ("Plaintiff" or "Marshall") filed this action, on behalf of himself and all others similarly situated, against Defendant James B. Nutter & Company ("Defendant" or "Nutter"), for alleged unlawful activities under the Maryland Finder's Fee Act ("MFFA"), MD. CODE ANN., COM. LAW §§ 12-801 *et seq.* (Count I), and the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW §§ 113-101, *et seq.* (Count II). Currently pending before this Court is Defendant's Motion for Partial Summary Judgment as to Plaintiff's Finder's Fee Act claim in Count I. Also pending before this Court are Plaintiff's Motion for Certification of the Class and Motion to Certify Questions of Law to the Court of Appeals of Maryland. This Court has reviewed the record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendant James B. Nutter & Company's Motion for Partial Summary Judgment (ECF No. 78) is GRANTED. Accordingly, judgment shall be entered in favor of Defendant and against Plaintiff as to Count I alleging conspiracy to violate the Maryland Finder's Fee Act. Additionally, Plaintiff William A. Marshall's Motion

to Certify Questions of Law to the Court of Appeals of Maryland (ECF No. 98) is DENIED. Finally, Plaintiff William A. Marshall's Motion for Certification of the Class (ECF No. 83) shall be held *sub curia* subject to further briefing.

**BACKGROUND**

The allegations contained in Plaintiff's Complaint (ECF No. 2) were fully set forth in this Court's previous Memorandum Opinion entered on September 29, 2011. *See Marshall v. James B. Nutter & Co.*, 816 F. Supp. 2d 259 (D. Md. 2011) (denying Defendant's motion to dismiss complaint and Plaintiff's motion to strike or alternatively for leave to file surreply). That background is repeated here, in part, so as to provide context for the pending motions.

On September 22, 2010, William A. Marshall, Jr. ("Plaintiff" or "Marshall") brought this class action lawsuit in the Circuit Court for Baltimore City, seeking damages and declaratory relief against Defendant James B. Nutter & Company ("Defendant" or "Nutter"). Marshall filed this action on behalf of himself and a putative class of all other similarly situated individuals "who were borrowers in mortgage loan transactions secured by real property in the State of Maryland during the period commencing twelve years before [the Complaint] was filed to the present ( the 'Class Period') where: (a) the mortgage loan was closed in the name of a nominal lender (other than Nutter); (b) Nutter funded the mortgage loan; and (c) Nutter received an assignment of the mortgage loan from the nominal lender contemporaneously with the closing." Compl. ¶ 31. Marshall alleges that Nutter, one of the largest private mortgage banking firms in the country, Compl. ¶ 11, conspired with Maryland mortgage brokers to violate the Maryland Finder's Fee Act ("MFFA"), MD. CODE ANN., COM. LAW §§ 12-801 *et seq.*, by "reaching an agreement and

understanding with mortgage brokers to table-fund[1] mortgage loan transactions of [Marshall] and other members of the class where brokers acted as both mortgage broker and lender, thereby enabling brokers to charge unlawful finder's fees." *Id.* ¶¶ 42-43. Similarly, Marshall alleges that Nutter conspired with Maryland mortgage brokers to violate the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW §§ 13-101 *et seq.* by conspiring with brokers acting as both mortgage broker and lender to "conceal[ ] and misrepresent[ ] Nutter's role as funding lender." *Id.* ¶¶ 50-51.

The record in this case reflects that Nutter is a mortgage banking firm licensed to conduct business in all fifty states with its principal place of business in Kansas City, Missouri. Madson[2] Decl. ¶¶ 3-4, ECF No. 87-2. "Nutter operates in a variety of sectors within the mortgage banking market, including both the forward mortgage market and the reverse mortgage market." *Id.* ¶ 5. In 2006, because Nutter "lacked any physical presence in Maryland," Nutter began to enter into contracts with "independent mortgage brokers" whereby these brokers would "initiate[ ] contact with Maryland borrowers . . . process[ ] borrower[ ] loan applications and generally facilitate[ ] the lending process." *Id.* ¶¶ 6-7. During the Class Period, Nutter entered into agreements with over fifty (50) independent mortgage brokers as well as "made or purchased nine hundred and ninety-nine (999) reverse mortgage loans associated with Maryland borrowers." *Id.* ¶¶ 7-8. According to Marshall six hundred and seventy-eight (678) of those loans are subject to class certification in this

---

[1] A "table-funded" transaction is a closing "at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds." Compl. ¶¶ 18-21, *see also* 24 C.F.R. § 3500.2(b).
[2] Paul Madson is the vice president of James B. Nutter & Company ("Nutter") and has been employed by Nutter since 1994. Madson Decl. ¶ 2.

action.[3] Pl.'s List of Class Transactions, ECF No. 83-4. Nutter concedes that these loans "were closed in the names of forty-six (46) unrelated mortgage brokers pursuant to a process referred to as 'table funding,' meaning the loans were 'funded by a contemporaneous advance of loans funds [by Nutter] and an assignment of the loan to the person advancing the funds [i.e. Nutter].'" Def.'s Opp. to Class Certification 6, ECF No. 87 (citing 24 C.F.R. § 3400.2). However, Nutter argues that "table funding is a widely utilized and accepted method of structuring mortgage lending transaction" which in and of itself is not illegal. *Id.* at 7.

The Complaint alleges that on or about August 18, 2008, Marshall applied for a reverse mortgage loan with Savings First Mortgage, LLC ("Savings First"). Compl. ¶ 23. On three previous occasions, Savings First had "acted as a mortgage broker for mortgage loans obtained by . . . Marshall on his residence." *Id.* ¶ 22; Savings First Broker Documents, Def.'s Opp. to Class Certification, Ex. 7, ECF No. 87-8. On September 11, 2008, Savings First closed Marshall's mortgage loan in the amount of $252,000.00 and contemporaneously assigned it to Nutter. *Id.* ¶¶ 25-26. In performing this transaction, Savings First charged Marshall $3,665.56 in fees. *Id.* ¶ 30. Despite the fact that Nutter had advanced the loan funds, all loan documents, including the HUD-1 Settlement Statement,[4] the Note, and the Deed of Trust referred to Savings First as the lender. Compl. Exs. B-D, ECF Nos. 2-2 to 2-

---

[3] Defendant contends that Marshall's exclusion of the three hundred and twenty-one loans (321) contradicts his claim. Def.'s Opp. to Class Certification 6, ECF No. 87. Specifically, Nutter explains that these loans were made pursuant to the same agreements which Marshall relies upon to claim that there was a uniform conspiracy to violate the MFFA and the MCPA. *Id.*

[4] Under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §§ 2601-2617, a HUD-1 settlement statement is required for every real estate settlement "involving a federally related mortgage loan in which there is a borrower and a seller." 24 C.F.R. § 3500.8(a). HUD-1 forms "conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement." 12 U.S.C. § 2603.

4. As a result, Marshall alleges that Nutter and Savings First conspired to conceal Nutter's role in the mortgage lending process and facilitated a table-funded transaction whereby Savings First could charge an illegal finder's fee in violation of the Maryland Finder's Fee Act. Compl. ¶¶ 26-30.

With respect to the putative class, Marshall alleges that he and the class members were charged unlawful finder's fees by the Maryland brokers which "averaged more than $3,000 per mortgage transaction, resulting in tens of millions of dollars or more in unlawful charges to borrowers during the twelve-year period covered by this Class Action Complaint." Compl. ¶ 6. Moreover, Marshall claims that "Nutter's table-funding scheme employed a universal element of deception." Pl.'s Mem. in Supp. of Class Certification 8, ECF No. 83-1. Specifically, Plaintiff claims that Nutter "systematically concealed his identity as the funding lender in the transactions of Named Plaintiff and the other Class members, concealed in a uniform manner the fact that their transactions were table funded, and concealed Nutter's role in the transaction." *Id.* In support of this allegation, Marshall refers to confidentiality agreements between Nutter and Maryland brokers allegedly "prohibiting the brokers from disclosing the 'terms and conditions' and 'written agreements and documents which govern or describe in any way the purchase and/or servicing' of such loans." *Id.* Finally, Marshall also alleges that all the mortgage loans at issue in this case, including Marshall's and those of the putative class members, were "made pursuant to standard broker agreements between Nutter and Maryland mortgage brokers; followed a standard 'roadmap' for originating, documenting and closing the loan; utilized standard documents prescribed by Nutter organized in a consistent manner; and were all table-

funded, with the broker appearing on the loan documents as lender."[5]  Pl.'s Mem. in Supp. of Class Certification 6.

Presently pending before this Court is Defendant's Motion for Partial Summary Judgment (ECF No. 78) as to Plaintiff's Finder's Fee Act claim in Count I.  Also pending before this Court are Plaintiff's Motion for Certification of the Class (ECF No. 83) and Motion to Certify Questions of Law to the Court of Appeals of Maryland (ECF No. 98).

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, summary judgment is proper "only when no 'reasonable jury could return a verdict for the nonmoving party.' " *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001)(quoting *Anderson*, 477 U.S. at 255)).  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372,

---

[5] While Nutter concedes that it entered into individualized reverse mortgage agreements with Maryland brokers to facilitate business relationships, it claims that Marshall's allegation that these agreements demonstrate a uniform pattern and practice is false.  Def.'s Opp. to Class Certification 8.  In fact, Nutter states that Marshall "cherry-picked only a few" of these agreements to draw an inference of uniformity.  *Id.*  However, Nutter contends, the reverse mortgage agreements associated with the alleged conspiracy "are materially different from broker to broker and, where brokers signed multiple agreements, materially different for the same broker."  *Id.*

378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

## ANALYSIS

Defendant James B. Nutter & Company ("Defendant" or "Nutter") contends that it is entitled to summary judgment with respect to the Maryland Finder's Fee Act ("MFFA") claim in Count I. Specifically, Defendant contends that in light of this Court's decision in *Petry v. Prosperity Mortgage Company* ("*Petry*"), a case consolidated with and referred to as *Minter v. Wells Fargo Bank, N.A.*, --- F. Supp. 2d ----, 2013 WL 593963 (D. Md. 2013), Nutter is not "legally capable" of violating the MFFA and therefore cannot be held liable for conspiracy to violate this Act. In response, Plaintiff William A. Marshall, Jr. ("Plaintiff" or "Marshall") argues that *Petry* was incorrectly decided and that it is factually distinguishable from the present case. To further note his disagreement with this Court's ruling in *Petry*, Plaintiff has filed a motion to certify questions of law to the Court of Appeals of Maryland.

While mortgage brokers are generally permitted to charge "finder's fees" in connection with originating mortgage loans, under the Maryland Finder's Fee Act, "a mortgage broker may not charge a finder's fee in any transaction in which the mortgage broker . . . is the lender . . . ." MD. CODE ANN., COM. LAW §§ 12-804(e). Essentially, therefore, the MFFA forbids the collection of a finder's fee by an entity simultaneously acting as a broker *and* a lender. In *Shenker v. Laureate Education, Inc.*, the Court of Appeals of Maryland held that a defendant "may be held liable as a civil conspirator . . . [where] he was legally capable of committing the underlying tort." 983 A.2d 408, 428-29 (Md. 2009). Relying on this decision, this Court held in *Petry*, a case involving the same plaintiff's attorneys and similar underlying facts, that "the class of individuals . . . legally capable of committing . . . the violation of the [M]FFA is narrow; the [M]FFA 'applies only to mortgage brokers and the fees they charge borrowers.' " *Minter*, 2013 WL 593963, at *20 (quoting *Fields v. Walpole*, DKC-11-1000, 2011 WL 2669401, at *7 (D. Md. July 6, 2011); *Sweeney v. Savings First Mortg., LLC*, 879 A.2d 1037, 104-49 (Md. 2005)).

Significantly, this Court rejected plaintiff's argument that mortgage lenders could also be held liable for MFFA violations as the language of the statute "still requires that a violator . . . be a 'mortgage broker.' " *Minter*, 2013 WL 593963, at *20. Additionally, the Court rejected plaintiff's contention that "it does not matter that [defendants] 'are not alleged to have [acted as mortgage brokers] in the transactions.' " *Id.* at *21. Specifically, the Court stated "[t]hat [defendants] are hypothetically capable of functioning as mortgage brokers in some other context, does not render them capable of committing the tort" of conspiracy to

violate the MFFA. *Id.* Accordingly, summary judgment was awarded in favor of Defendants on the claim of conspiracy to violate the Maryland Finder's Fee Act. *Id.*

In this case, Nutter is not alleged to be a mortgage broker nor is there any evidence that it acted as a mortgage broker in the transactions at issue. In fact, the Complaint repeatedly alleges that Nutter acted as a funding lender. Although Plaintiff claims that the deposition testimonies of Len Kuklenski, Nutter's treasurer, and Paul Madson, Nutter's Vice President, reveal that "Nutter acted as a mortgage broker in the loan transactions of Mr. Marshall and the other class members," Pl.'s Mem. in Opp. to Partial Summ. J. 5, ECF No. 90-1, a review of their testimonies indicates that if indeed Nutter acted as a mortgage broker, this happened after the loans had already closed. *See* Madson Decl. 30-31, ECF No. 83-11. Therefore, Plaintiff's theory of the case remains that Nutter acted as a funding lender for mortgage loans brokered by Maryland mortgage brokers who in turn charged fees to the borrowers. Therefore, in light of this Court's decision in *Petry*, Defendant is entitled to summary judgment as to the MFFA claim.

In an effort to oppose summary judgment as to this claim, Plaintiff requests that the Court revisit its recent decision in *Petry* and submits the same arguments as to mortgage lenders and hypothetical mortgage brokers previously rejected by this Court. Particularly, Plaintiff contends that "entities who conspire to violate the [M]FFA must be held accountable, whether or not they are acting as mortgage brokers in the particular transaction at issue." Pl.'s Mem. in Opp. to Partial Summ. J. 24, ECF No. 90-1. However, this Court has already addressed these arguments and is not inclined to displace its prior ruling.

## A. Rule 56(d) Discovery Request

In opposing Defendant's motion for summary judgment, Plaintiff also requests additional discovery time. Specifically, Plaintiff seeks additional time to obtain evidence that "Nutter may have functioned as a mortgage broker in the loan transactions of Mr. Marshall and class members." Carney Decl. ¶ 7, ECF No. 90-8. According to Plaintiff, because discovery thus far has been limited to class certification discovery, he has not been able to "explore the merits of this issue and to obtain evidence through full merits discovery concerning . . . [*inter alia*] whether Nutter acted as a broker, or lender or both in the transactions of Plaintiff and the putative class." *Id.*

Under Rule 56(d) of the Federal Rules of Civil Procedure consideration of a motion may be differed "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56[d] in *good faith* and to afford the trial court the showing necessary to assess the merits of a party's opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (emphasis added). However, "Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.' " *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, DKC-08-2586, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011)). The Fourth Circuit has held that these requests should be denied "if the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (internal quotation marks omitted).

Additionally, this Court has recently held that "Rule 56(d) does not allow parties to engage in a 'fishing expedition,' especially one proposed after [several] years of litigation." *Zimmerman v. Novartis Pharms. Corp.*, 287 F.R.D. 357, 364 (D. Md. 2012).

Since the beginning of this action, over two years ago, Plaintiff has alleged that Nutter conspired with Maryland mortgage brokers to table-fund loans for which the Maryland brokers were asked to lie about their brokering role, conceal Nutter's lending role, and were able to charge illegal finder's fees. However, now, in light of the recent decision in *Petry*, adverse to his position, Plaintiff attempts to allege, and seeks discovery to demonstrate, that Nutter "acted as a mortgage broker." This recent request for additional discovery time appears to be one of Plaintiff's attempts to skirt this Court's ruling in *Petry*. This tardy invocation of "the protections of Rule 56[d] [does not appear to be] in *good faith*." *Harrods*, 302 F.3d at 244. Moreover, granting such a request at this time would be tantamount to allowing Plaintiff to engage in a "fishing expedition" to establish a claim which it has not previously alleged. Accordingly, Plaintiff's Rule 56(d) discovery request is DENIED.

## B. Motion to Certify Questions of Law to the Court of Appeals of Maryland

In a further attempt to oppose this Court's decision in *Petry*, Plaintiff has also sought to certify questions of law to the Court of Appeals of Maryland. Specifically, Plaintiff requests that this court certify the following questions:

1. Whether the decision in *Shenker v. Laureate Education, Inc.*, 411 Md. 317, 983 A.2d 408 (2009) abrogated the rule that liability for civil conspiracy may extend beyond direct perpetrators of the underlying tort; and
2. Whether a non-broker may be liable for common law conspiracy to violate the Maryland Finder's Fee Act, Md. Code Ann., Com. Law §§ 12-801 *et seq.*, where the non-broker conspired with a Maryland broker to violate the Act.

Mot. to Cert. Questions of Law, ECF No. 98.

First, this Court notes that in seeking to present these questions to the Court of Appeals of Maryland, Plaintiff is essentially requesting that this Court ask the Maryland Court to affirm or displace its ruling in *Petry*. Second, "it is well established that the decision to certify a question to the Court of Appeals of Maryland is not obligatory and 'rests in the sound discretion of the federal court.'" *Hafford v. Equity One, Inc.,* AW-07-1633, AW-06-0975, 2008 WL 906015, at *4 (D. Md. Mar. 31, 2008) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974); *Boyster v. Comm'r of Internal Revenue Serv.*, 668 F.2d 1382 (4th Cir. 1981)). In exercising such discretion, federal courts may decide not to certify a question to a state court where the federal court can reach a "reasoned and principled conclusion." *Hafford*, 2008 WL 906015, at *4. "Only if the available state law is clearly insufficient should the court certify the issue to the state court." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994) (citing *Smith v. FCX, Inc.*, 744 F.2d 1378, 1379 (4th Cir. 1984), *cert. denied*, 471 U.S. 1103 (1985)). "When this guidance is available the federal court should decide the case before it rather than staying and prolonging the proceedings." *Arrington v. Colleen, Inc.*, 2001 WL 34117735, at *5 (D. Md. Mar. 29, 2001). Moreover, where "[t]he plaintiff sought and received a federal court's interpretation of state law," a request for certification of that question or similar questions to the state court "comes with little grace." *Smith*, 744 F.2d at 1379 (citing *Cantwell v. University of Massachusetts*, 551 F.2d 879, 880 (1st Cir. 1977)).

This Court has already ruled that only mortgage brokers are "legally capable" of violating the Maryland Finder's Fee Act. *Minter*, 2013 WL 593963, at *20. Notably, when this Court made its determination, the case involved the same plaintiff's attorneys and a similar claim. Accordingly, this Court has received guidance with respect to the specific

issue in this case and Plaintiff's Motion to Certify Questions of Law to the Court of Appeals of Maryland is DENIED.

## CONCLUSION

For the reasons stated above, Defendant James B. Nutter & Company's Motion for Partial Summary Judgment (ECF No. 78) is GRANTED. Accordingly, judgment shall be entered in favor of Defendant and against Plaintiff as to Count I alleging conspiracy to violate the Maryland Finder's Fee Act. Additionally, Plaintiff William A. Marshall's Motion to Certify Questions of Law to the Court of Appeals of Maryland (ECF No. 98) is DENIED. Finally, Plaintiff William A. Marshall's Motion for Certification of the Class (ECF No. 83) shall be held *sub curia* subject to further briefing.

A separate Order follows.

Dated: July 2, 2013  /s/_____
Richard D. Bennett
United States District Judge